UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER D. BUGGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-672 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Christopher Buggs was hospitalized in May 2013 for swelling in his lower legs, ankles, and feet, and in January 2014, he began experiencing right foot drop of an uncertain etiology. He applied for social security disability benefits, claiming that he was no longer able to work, but the Commissioner denied his application. Buggs filed this action seeking review of that decision. For the following reasons, the Court reverses and remands this action for further proceedings.

### I. FACTUAL BACKGROUND

Since May 2013, Buggs has continuously sought medical treatment (in relevant part) for right lower extremity problems, including leg edema, ankle arthritis, and foot drop. He takes hydrocodone to help with unbearable pain, but because he doesn't like taking pain pills he regularly suffers from moderate pain. He has tried steroid injections and uses an ankle foot orthosis and cane to ambulate.

The only consultative examination of record occurred on August 4, 2014 (Tr. 412-17). At that time, Dr. Ibekie observed that Buggs walked with a "slightly bending posture using a cane." Upon examination, Buggs presented with limited range of motion, decreased strength, and abnormal sensation to his right ankle and foot. Dr. Ibekie reported that:

> [Buggs] has an ataxic gait using a cane. He is able to stoop and squat with difficulty. He is unable to walk heel to toe and tandemly. He is able to get on and off the examination table with difficulty and did not require any assistance. He is able to stand from a sitting position with difficulty.

Dr. Ibekie opined that Buggs suffered from a history of right foot drop since 2013 with a limited range of motion and a history of pain and paresthesia in the right lower extremity.

Thereafter, the reviewing state agents opined that Buggs was capable of performing sedentary work (Tr. 176-92, 194-210).

In January 2015, an EMG confirmed that Buggs had nerve damage in his right lower extremity (Tr. 449-53). Specifically, the EMG revealed "subtle denervation changes" in the "anterior tibialis muscle[,] consistent with history of recent foot drop; however, there is no evidence for ongoing or active peroneal nerve entrapment at the fibular head or for sciatic nerve dysfunction." Nor was there any electrical evidence for lumbosacral radiculopathy. Buggs was able to heel and toe walk on that date, but he was limited by pain and mild swelling. There was a mild Tinel's sign at the fibular head. It was believed that Buggs had suffered some peroneal or distal sciatic nerve injury several months prior and he was referred to a podiatrist.

In September 2015, Buggs sought treatment with a podiatrist, Dr. Michael C. Lyons, who diagnosed Buggs with right foot drop and ankle arthritis (Tr. 492). Dr. Lyons continued to document Buggs' problems with pain, swelling, and reduced strength in his right foot. As late as August 2016, Dr. Lyons noted that Buggs had not had any improvement in his pain, range of motion, and muscle strength (Tr. 465). Dr. Lyons recommended a second opinion from a neurologist and discussed the possibility of Buggs being placed on disability "given his lack of improvement, lack of function, and overall limitations."

Despite this evidence, the ALJ found that Buggs' severe impairments of right ankle arthritis and right foot drop did not render Buggs disabled because he was still able to perform

2

sedentary work, subject to a number of physical limitations including the need to use a cane "for prolonged ambulation." Based on testimony from a vocational expert, the ALJ concluded that a person with that residual functional capacity would still be able to perform work as a call out operator, addresser, tube operator, eyeglass frames polisher, surveillance system monitor, charge account clerk, and telephone order clerk. The VE testified that consistent with the Dictionary of Occupational Titles, these jobs existed in significant numbers. Given the VE's testimony, the ALJ found that Buggs was not disabled and denied his claim. The Appeals Council denied review, so Buggs filed this action, asking that the Commissioner's decision be reversed and remanded for further proceedings.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the

3

Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## III.  DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform relevant past work; and
5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the RFC to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Buggs argues that reversal is required given the ALJ's failure to consider whether he met or medically equaled Listing 11.14 for "Peripheral Neuropathy" and given that the ALJ inadequately supported his RFC determination. The Court agrees that remand is required because the RFC analysis was affected by the ALJ's credibility analysis, which itself was not supported by substantial evidence. Given this shortcoming, the Court leaves it to the parties to address the relevant Listings on remand.

According to Buggs, it is painful for him to stand or put pressure on his leg, and he cannot stand or sit for long periods of time (Tr. 147). He also reported having to keep his foot elevated due to swelling and pain (Tr. 329). Buggs estimated that he can sit for thirty minutes, stand for twenty minutes, and walk (while wearing his brace and using his cane) for twenty-five

minutes (Tr. 151-52). Buggs' girlfriend testified that his right leg swells three or four times a week, requiring him to ice and elevate it above his heart for several hours (Tr. 163-65). She explained that this is his prescribed treatment because there is nothing else that the doctors can do to relieve the swelling in his legs. She indicated that Buggs is able to help out around the house only a few times a week due to his leg swelling and pain. The ALJ found that Buggs' conditions could reasonably be expected to cause some pain and physical difficulties, but that his symptoms and limitations were not as serious as Buggs and his girlfriend alleged.

Because the ALJ is in the best position to determine a witness' truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's decision must, however, provide specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. SSR 16-3p (superseding SSR 96-7p)[1]; *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Pepper*, 712 F.3d at 367; *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). An ALJ also may not ignore evidence. *Myles*, 582 F.3d at 676.

Here, the ALJ's credibility analysis was flawed in multiple respects. First, the ALJ failed to discuss Buggs' activities of daily living, how he goes about performing those activities, and

---

[1] In March 2016, the Social Security Administration issued SSR 16-3p, which supersedes SSR 96-7p. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p. However, under either SSR version, the outcome in this case would be the same.

what effect the activities have on him. *See* SSR 16-3p. Admittedly, this is not a situation where the ALJ equated household or daily chores to full-time work, *see e.g.*, *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008); rather, the ALJ simply ignored evidence indicative of Buggs' inability to stand for at least two hours (even with a cane). *See Myles*, 582 F.3d at 676. Had the ALJ addressed this evidence, the ALJ might have (and should have) acknowledged that Buggs repeatedly reported an inability to enjoy a shower, play with his kids, or cook because of his inability to stand long enough. He also reported being unable to cut the grass or shovel the snow because he must wear a foot brace and use a cane. Buggs indicated having to regularly elevate his leg to reduce the swelling and pain. Buggs' reports were corroborated with his girlfriend's account—that Buggs is oftentimes unable to help around the house due to the swelling in his leg and the need to elevate it for several hours. Given Buggs' self-reports, as further supported by his girlfriend's reports, the ALJ should have at least mentioned how Buggs' limitations in performing daily activities translated into an ability to still perform restricted sedentary work. *See Bjornson v. Astrue*, 671 F.3d 640, 646 (7th Cir. 2012) ("one does sedentary work sitting . . . but not lying down"); *see also Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (no employer is likely to hire a person who must stop working and lie down two or three times a day for an hour at a time).

In discounting Buggs' allegations concerning the persistence and limiting effects of his symptoms, the ALJ explained that Buggs' "conservative treatment suggests that his impairments are not as severe as he alleges" (Tr. 115). The ALJ faulted Buggs for not taking his pain medication regularly, for not receiving more aggressive treatment, and for not having documentation from treating physicians recommending greater treatment modalities. However, the ALJ committed error here by failing to explain how he reached this conclusion in spite of

evidence in the record that otherwise provides context for Buggs' "conservative" treatment. *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016) (noting that the ALJ erred by basing his adverse credibility determination on the claimant's decision not to undergo surgery without inquiring into the reasons for doing so). For example, Buggs explained that he only took his pain medication when the pain became unbearable because he did not like taking pain pills. Which, had the ALJ discussed this explanation, he might have credited such testimony as consistent with Buggs' attempt to avoid substance abuse relapse given Buggs' history. The record also contains evidence that the cause of Buggs' foot drop was unknown (Tr. 308), which might very well explain the lack of further treatment recommendations from doctors. In fact, Buggs' girlfriend testified that the only prescribed treatment for Buggs consisted of elevating the right foot because the doctors could not do anything else to help alleviate the swelling. But, again, the ALJ made no mention of these facts when he criticized Buggs for failing to undergo more aggressive treatment.

The ALJ also stated that Buggs' symptoms and limitations were "not entirely consistent with the medical evidence and other evidence in the record" (Tr. 113). The ALJ then impermissibly "cherry-picked" facts from seven pages of medical records to support his conclusions, *see* Tr. 112, 114, 115 (citing 8F/6; 14F/7-9; 15F/7; 16F/10; 20F/5), in an attempt to trump extensive medical evidence from the record that supports Buggs' allegations of persistent weight-bearing limitations.[2] *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). More precisely,

---

[2] Much of the evidence documenting Buggs' longitudinal treatment and ongoing physical problems were provided by treating physicians, Drs. Darr and Lyons. Thus, the ALJ's discounting the opinions of these doctors (who supported Buggs' claimed disability), based on cherry-picked records was similarly improper. Not only did the ALJ fail to acknowledge the consistency of their opinions with the record as a whole, he further failed to refer to the length of Buggs' treatment relationship with the doctors, the frequency of his examinations, or the nature and extent of the treatment relationships. *See Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir.

8

the ALJ characterizes these seven pages as revealing that at times Buggs has shown normal strength, good range of motion, intact sensation, and a normal ability to walk without assistance. Yet, those same records document that Buggs continued to suffer from pain and ankle swelling, continued to have an altered gait, and was referred to a podiatrist, or otherwise indicate that Buggs was seeking treatment with respect to unrelated upper extremity, back, and lung/chest problems. Thus, such sporadic record notations do not accurately convey the continuous nature of Buggs' lower extremity pain, swelling, and limited strength, as evidenced by voluminous medical records dating back to 2013 and continuing through mid-2016. In this respect, the ALJ wholly failed to build the requisite "logical bridge" from the evidence and his conclusions. *See Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). Thus, this factor is insufficient to support the ALJ's credibility finding.

The gap in the ALJ's credibility analysis (which ultimately affected the assessed RFC), cannot be filled by the ALJ's giving of partial weight to the reviewing agents' opinions in this case. The regulations indicate that because non-examining sources have no examining or treating relationship with the claimant, "the weight [the ALJ] will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions." 20 C.F.R. § 404.1527(c)(3). Here, the state agents conducted a file review in early August and October 2014. They never examined Buggs and they did not have the benefit of Buggs' testimony in rendering their opinions. Moreover, their opinions were made prior to the January 2015 EMG, which confirmed that Buggs had suffered from nerve damage in his right lower

---

2014) (citing 20 C.F.R. § 404.1527(c)(1)-(5)). Accordingly (even absent the application of the now abrogated treating physician rule, *see* 20 C.F.R. § 404.1520c, 404.1527), on remand the ALJ should take care to consider these additional factors in deciding the amount of weight to give to the treating physicians' opinions. *See id.*

9

extremity. The state agent opinions also didn't include consideration of the records from treating specialist Dr. Lyons, whose examinations revealed ongoing pain and lack of improvement with respect to Buggs' right lower extremity. And, it does not appear that the ALJ had another RFC assessment conducted by any medical professional in order to determine whether the RFC might change based on this additional evidence. *See Staggs v. Astrue*, 781 F.Supp.2d 790, 794–96 (S.D. Ind. 2011) (finding that the medical record omitted from review provided "significant substantive evidence" regarding the claimant's medical impairments and that any medical opinion rendered without taking this record into consideration was "incomplete and ineffective.").

Moreover, the only examining consultative physician provided significant evidence that cuts against the RFC conclusion reached by the ALJ. Dr. Ibekie reported that Buggs had an ataxic gait using a cane, had difficulty stooping, squatting, standing, and getting on and off of the examination table, and was unable to walk heel to toe and tandemly. These observations, of course, undercut the ALJ's finding that Buggs could occasionally stoop, bend, kneel, crouch, and crawl. *See, e.g., Spicher v. Berryhill*, No. 17-3399, 2018 WL 3677566, at *4 (7th Cir. Aug. 3, 2018) (reasoning that the claimant's difficultly in lowering herself onto a raised examining table suggests that the claimant would struggle to lower herself to a crouching or crawling position). And Buggs' inability to walk heel to toe and tandemly and difficulty standing from a seated position casts doubt on the ALJ's finding that Buggs could engage in prolonged ambulation and up to two hours of balancing even with a cane. In short, the ALJ did not adequately explain why the observations from Dr. Ibekie's report support the ALJ's finding that Buggs was capable of sedentary work including "prolonged ambulation" with a cane. Instead, the ALJ "played doctor"

by substituting his own judgment without substantial evidence to support the RFC. *Myles*, 582 F.3d at 677-78.

For each of the reasons discussed, the Court cannot conclude that the ALJ's decision to discount Buggs' reports (and his girlfriend's corroborating statements) were supported by substantial evidence. That error is not harmless. If, on remand, the ALJ decides to give greater weight to Buggs' subjective complaints and limitations (or to the opinions of the treating doctors), that could result in a more restrictive RFC finding. Accordingly, the Court remands this action to the Commissioner for further proceedings.

## IV.  CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED:  August 29, 2018

/s/ JON E. DEGUILIO
Judge
United States District Court